Bennett et al. v. Murtaugh et al.

NATHAN BENNETT, *et al.*

*vs.*

TIMOTHY MURTAUGH, *et al*

Plaintiffs *operate* water mills on the Le Sueur river, a considerable part of the water of which is supplied by lake Madison. *Held*, that upon the facts of this case (as detailed in the opinion,) defendants were properly enjoined from *extending* in the direction of the lake a ditch which had been dug upon a marsh belonging to one of defendants, adjoining said lake—it appearing that at times of high water said ditch if so extended would draw off the water of said lake.

This action was brought in the district court for Blue Earth county, and was tried before a referee who reported in favor of plaintiffs, and directed judgment accordingly. Defendants. moved for a new trial which was denied, and they appeal to this court.

The case is fully stated in the opinion.

BROWN & WISWELL, for Appellants.

J. A. KENNEDY and D. WILCOX, for Respondents.

*By the Court.*—BERRY, J.—The referee finds that the plaintiffs are operating water mills on the Le Sueur river, and that a considerable portion of the water used in running said mills is supplied by lake Madison. He further finds : " That from three-fourths of a mile to a mile up the lake from the outlet, there is a marsh or swamp partly upon land owned by defendant, Timothy Murtaugh. This marsh is about half-a-

mile long and of less width. For the distance of about a quarter of a mile the marsh lies adjacent to the lake, being separated from it only by a natural embankment of earth; through this embankment there is a natural outlet through which the water in the marsh is discharged into the lake. At most seasons of the year there is a natural stream of water running through this outlet from the marsh into the lake. There is no perceptible current in the marsh itself, it is fed by no streams, and in the summer is partially but never wholly dry. In ordinary stages of water, the marsh is higher than the lake, but in some seasons the lake rises so as to form a continuous body of water in the lake and in the marsh for a long distance from the lake.

" West of this marsh there is a swamp or marsh upon land owned by defendant, Michael Murtaugh. The water from this marsh flows into lake Valentine, which lake is emptied into lake Washington, which latter lake is discharged by Kasota creek, upon which stream defendants Cook and Millard were operating a water power mill at and before the commencement of this action.

" This marsh is considerably lower than lake Madison or the other marsh adjacent thereto."

He further finds that some time before the commencement of this action defendants Timothy Murtaugh, Michael Murtaugh and Hiram Cook, " entered into a concerted plan," the two former for the purpose of draining said marshes, and the latter for the purpose of improving the flow of water for the benefit of his mill power, to dig a ditch through (among other lands,) the said marsh of Timothy Murtaugh, to or near lake Madison so as to drain said marsh, (among others,) and " so that at times when the latter marsh should be overflowed by the waters of lake Madison (which occurs in times of high water,) such ditch should draw off such overflowing water

Bennett et al. v. Murtaugh et al.

also," into the stream upon which said Cook's mill is situated. He further finds that with the purpose of carrying out this plan said defendants have dug said ditch " for a distance of about fifty rods into the marsh of said Timothy Murtaugh, to a point about one hundred rods from lake Madison."

He further finds as follows : ." That the effect of the ditch as it now is, is to partially drain this marsh of Timothy Murtaugh, in a direction opposite lake Madison ; the waters of the marsh now being discharged partly through its natural outlet through Madison lake, and partly through the said ditch into lake Valentine.

"That the effect of said ditch, if the same had been extended, as was intended and undertaken by said defendants, would have been to drain the marsh into lake Valentine, and at times when Madison lake rose so as to be on a level with the marsh, to partially drain that lake also.

" That the lake (Madison) has not, hitherto, risen to such a height as to overflow the marsh at the point where the ditch now is, and that the lake is not drained or its waters drawn off by the existing ditch."

As matter of law the referee finds :  " That plaintiffs are entitled to a judgment against defendants, Timothy Murtaugh, Michael Murtaugh and Hiram Cook, restraining and enjoining them and each of them from extending said ditch any further in the direction of Madison lake, and from in any manner drawing off or diverting the waters of said lake, together with the costs of this action. Judgment will be entered accordingly."

As there is no question made as to the right of plaintiffs to the water power used by them, and as it is found that a considerable part of such water power is supplied from lake Madison, the waters of which naturally flow into the Le Sueur river upon which stream the plaintiffs' mills are situated,

defendants cannot as against plaintiffs rightfully draw off or divert the waters of said lake. If, then, the effect of the further extension of the ditch in the direction of the lake will be to draw off or divert the waters of the lake, there is no reason why such extension should not be enjoined, as well as the drawing off or diverting of said waters in any manner. There seems to be no controversy as to the fact that the further extension of the ditch towards lake Madison will, at times when lake Madison rises (as it does at high water) so as to be on a level with and overflow the marsh, result in partially draining such lake and drawing off the waters thereof. The plaintiffs being entitled to the use of the lake as a source of supply, we can conceive of no reason why they are not entitled to such use at any and all stages of the water, and, of course, against any threatened interference with such use by defendants.

As to defendants' suggestion that it is not shown that any damage could arise from drawing off the surplus water at times of high water, it is to be answered, that as the evidence is not here it does not appear what was shown. There is no physical impossibility that such damage might result. Indeed it might be that the further extension of the ditch would draw off the water at the very time when it would be most valuable to plaintiffs.

The objection is made (and so far as we can perceive in this court for the first time) that the complaint does not state a cause of action. 1st, because the statute, ch. 40, 1867, forbids the draining of meandered lakes only, and lake Madison is not alleged to be a meandered lake. It does not follow, however, that because a meandered lake cannot be drained that therefore any other can be. The further objection, viz.: that there is no allegation or proof that plaintiffs have or claim any interest in the land covered by lake Madison, is frivolous,

Bennett et al. v. Murtaugh et al.

in view of the finding that plaintiffs are operators of mills upon Le Sueur river into which the waters of the lake naturally flow.   Finally the defendants contend that the court below erred in refusing to dismiss the action on the ground that the ditch had been dug under an order before made in the case.   The order referred to (which for aught that appears may have been made on the pleadings only) was an order vacating as to Timothy Murtaugh only, a temporary injunction granted as to all the defendants and appears to have been made on said Timothy's sole application.   The order states that " the defendant, it would seem from the papers, has never intended to extend the ditch which he has been enjoined from digging, nearer than eighty rods from the lake in question, and has not dug the same with any intention of turning the waters of said lake from their natural course and direction."   The temporary injunction is accordingly dissolved as respects Timothy Murtaugh.   The order proceeded further, as follows, viz.:   " This order will be set aside and said injunction restored on proof of the extension of said ditch within eighty rods of said lake or any of its arms or branches."   The making of this order did not (so far as appears) affect nor determine the issues framed upon the pleadings.   The defendants, as the referee finds, originally entered into a " concerted plan " to dig so as to drain the lake and commenced operations accordingly.   That Timothy Murtaugh refrained before trial from extending the ditch beyond the point at which the court warned him not to go, furnished no reason why he, with the other defendants, should not be enjoined upon and after trial from extending the ditch if upon trial it appeared that such extension would draw off the waters of the lake.   As to the question of costs we see no reason why they should not have followed the result of the action.

Order denying new trial affirmed.