## S. M. BRAMAN AND ANOTHER v. JOHN P. WALL AND ANOTHER.[1]

January 29, 1943.

No. 33,326.

See 210 Minn. 196, 297 N. W. 755; 210 Minn. 548, 299 N. W. 243.

[1]Reported in 7 N. W. (2d) 924.

*Jacob Garon* and *Donald A. Chapman,* for appellants.

*George H. Niles,* for respondent John P. Wall as sheriff.

LORING, JUSTICE.

These two replevin cases were brought to recover possession of life insurance policies and assignments thereof upon which the defendant, as sheriff, had levied an execution while they were in the possession of the Fourth Northwestern National Bank of Minneapolis as security for a $2,400 loan to the plaintiff S. M. Braman. The cases were consolidated for trial.

Roy Courteau and Louis Trosin recovered three judgments against S. M. Braman in the municipal court of Minneapolis June 23, 1939. Transcripts of these judgments were filed in the district court and execution issued thereon. Garnishments had been instituted in the municipal court with the bank as garnishee. The bank disclosed the possession of the life insurance policies, together with assignments thereof to it in blank, and that the total cash surrender value of the policies was approximately $1,575. It also disclosed the possession of an assignment from Braman of $2,185 due him from the Chicago & North Western Railway Company, as well as a guaranty of Braman's credit to the extent of $1,000 made by one Morris Trach. The municipal court directed the garnishee to deliver the property to its clerk upon payment of $2,403.99 with interest. This order was dated September 8, 1939, but in the meantime, on July 31, 1939, the sheriff having made his levy on the collateral in the bank, that institution certified to him that it held the property levied upon as collateral to Braman's loan. August 14, 1939, George H. Niles as attorney for Courteau and Trosin, but, as he now claims, without authority from them, proceeding under Minn. St. 1941, § 571.23 (Mason St. 1927, § 9376), placed in the hands of the sheriff $2,403.99 to pay to the bank for its lien on the property levied upon by the sheriff. Payment to the bank by the sheriff was made on the following day. September 9, 1939, the bank delivered the property to the clerk of the municipal court, who on September 11, 1939, pursuant to an order of that court,

delivered it to the sheriff. On the 19th of that month, the district court ordered the sheriff to release his levy on the insurance policies as exempt. On the 22nd, the sheriff sold the nonexempt property to one James B. Niles for $5.00. Later, James B. Niles collected $2,185 from the railway company. See Nash v. S. M. Braman Co. 210 Minn. 196, 297 N. W. 755. In Braman v. Wall, 210 Minn. 548, 299 N. W. 243, a new trial was ordered in the case at bar, with a suggestion that in the meantime any person who might claim a lien upon the policies be impleaded.

On the second trial, however, James B. Niles, mentioned in the first trial as having furnished George H. Niles the money which the latter paid to the bank on behalf of his clients and who, the trial court recited, had been made a party defendant, specifically disclaimed any right, title, or interest in the property replevined; and no evidence whatever was introduced showing title to or lien upon such policies or the assignments thereto except that the plaintiff S. M. Braman was the owner of the policies. The sheriff offered no evidence. Nevertheless, the trial court made findings and conclusions that judgment be entered that Wall, as sheriff, was entitled to the possession of the policies and assignments and that the policies, possession of which had been secured by the plaintiffs under a replevin bond, be returned to the sheriff unless within 20 days the plaintiff S. M. Braman pay into court $215 with interest from September 8, 1939, depositing the same with the clerk of the district court of Hennepin county for the benefit of the rightful owner thereof, in which case plaintiffs would be entitled to possession of the policies and assignments and the sheriff would have no further interest therein. These findings, as amended, and order were dated and filed March 25, 1942, and on March 31, 1942, George H. Niles, as attorney for the sheriff, filed with the clerk of the district court a waiver of any right, title, or interest in the $215 or any other sum required to be deposited with the clerk of court, and requested the court to "grant to the plaintiffs any relief to which they may be entitled without requiring the depositing of said moneys, or any money." Thereupon, the plaintiffs

moved for amended findings or a new trial. The motion for new trial was denied. The trial court on its previous order of March 5, 1942, had quite pertinently remarked:

"Neither party has been of very much assistance to the court in his attempt to determine the issues. On the contrary, the effort of both seem to have been to jockey for position on technical grounds and evade consideration and trial on the merits."

We think the court was in error in ordering judgment for the sheriff unless Braman paid him $215 and interest. The evidence showed that Braman was the owner of the policies and assignments. The sheriff might have taken refuge in the defense that he had not taken the property from the plaintiffs and that a third party was entitled to possession as against plaintiffs. Braman v. Wall, 210 Minn. 548, 549, 299 N. W. 243, but he made no such proof. On the contrary, it appears that the sheriff holds the policies and assignments thereof under a levy made under executions issued on judgments in which Courteau and Trosin were judgment creditors, and that their attorney furnished him the money to pay the bank's lien in their behalf. As sheriff, the defendant could not otherwise obtain these securities. Whatever claim their attorney or any other Niles may have against Courteau or Trosin for furnishing the money to pay up the lien is a matter between them and Courteau and Trosin. It has no place in this lawsuit. James B. Niles, who furnished the money, disclaims any interest in the policies. Counsel announced that Courteau and Trosin had no claim against the policies or assignments that he knew of. Presumably, their judgments have been otherwise satisfied. The sheriff also disclaimed any interest, and no evidence was introduced tending to show any right by him to retain either the policies or the assignments. Therefore the order and judgment of the trial court are reversed with directions to enter judgment that plaintiffs are the owners and entitled to the immediate possession of those documents and directing their return to them.

So ordered.